UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARYL CLIFF,

                Petitioner,

v.                                  Case No.  4:21-cv-11266
                                  Honorable F. Kay Behm

G. MINIARD,

                Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

This is a habeas action filed under 28 U.S.C. § 2254.  Michigan prisoner

Daryl Cliff challenges his 2018 jury-based convictions for first-degree criminal

sexual conduct (CSC-I), Mich. Comp. Laws § 750.520b(2)(b)); second-degree

criminal sexual conduct (CSC-II), Mich. Comp. Laws § 750.520c(2)(b); third-

degree criminal sexual conduct (CSC-III), Mich. Comp. Laws § 750.520d(1)(a);

fourth-degree criminal sexual conduct (CSC-IV), Mich. Comp. Laws § 750.520e;

second-degree child abuse, Mich. Comp. Laws § 750.136b(3); and third-degree

child abuse, Mich. Comp. Laws § 750.136b(5) in the Wayne County Circuit Court.

Petitioner raises two claims concerning: (1) the ineffective assistance of trial

counsel and (2) the trial court's admission of prior-acts evidence and related jury

instructional error.  Respondent has filed an answer contending that a portion of

Petitioner's ineffective assistance of counsel claim is procedurally defaulted, and all claims lack merit.  For the reasons below, the Court will deny the petition.  The Court will also deny a certificate of appealability and deny leave to appeal *in forma pauperis* should Petitioner choose to appeal this decision.

## I.     BACKGROUND

Petitioner's convictions arose from the physical and sexual abuse of a minor child.  The following facts as recited by the Michigan Court of Appeals are presumed correct on habeas review.  *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009); 28 U.S.C. § 2254(e)(1):

> Defendant's convictions result from his physical and sexual abuse of the minor NR, who was a friend of defendant's family. NR testified that his first sexual encounter with defendant occurred in defendant's basement when NR was 11 years old. Defendant approached NR from behind and began to rub NR's back and shoulders while NR played a videogame on defendant's computer. According to NR, defendant slowly moved his hands down to NR's genital area and began to rub NR's penis with his hand. NR testified that, on another occasion at a local recreational center, defendant had NR come into the same shower stall as him, forced NR onto his knees, and placed his penis inside NR's mouth. A similar incident happened at a laser-tag center. NR testified that, over time, the frequency of defendant's sexual abuse increased until defendant was sexually abusing NR weekly, often by touching NR's penis and buttocks while in defendant's basement.
>
> In addition to the sexual abuse, NR testified that defendant physically abused him, often when he would resist defendant's sexual advances. On one occasion, defendant stabbed NR in the back with a medical syringe and on several occasions defendant forced NR to cut himself on the arm with a knife. Frequently, defendant would hit NR on his upper arms and back and kick NR's feet when NR rebuffed his advances. According to NR, on regular occasions, defendant would

force him to pretend to be a dog—requiring NR to eat dog food, wear a dog leash, and follow commands typically given to a canine. Investigators found a syringe in defendant's home, but did not locate some of the items related to defendant allegedly forcing NR to pretend he was a dog.

According to NR, defendant's abuse ceased when NR was 13 years old and was twice hospitalized for attempted suicide. NR first revealed defendant's abuse to his therapist during one of these hospitalizations. Eventually, detective Jane Kass and her partner interviewed defendant at the jail. During the interview, defendant revealed that, some 30 years prior, he had given a 15-year-old boy a back massage in defendant's basement. Defendant added that the encounter "ended badly." Detective Kass told defendant that she was aware that he had massaged the boy's genitals. Defendant did not deny the allegation and in subsequent statements appeared to admit that he did, in fact, touch the boy's genitals. For instance, Detective Kass pressed defendant, asking if he had massaged the boy's genitals under the boy's clothes, to which defendant replied that the boy was fully dressed. Detective Kass asked if defendant was getting "turned on" by giving the boy a back massage, to which defendant replied, "Maybe, a little bit." Detective Kass questioned defendant whether he thought it was a good idea to massage the boy's genitals to see if the boy would also become sexually aroused. Defendant stated, "I'm not sure . . . I know it was wrong." Defendant later stated that he had asked the boy's family for forgiveness.

Before trial, the prosecution filed a notice of intent to introduce defendant's interview statements at trial under MCL 768.27a. Defendant moved to suppress the statements, arguing that they were inadmissible under MCL 768.27a and MRE 403. The trial court denied the motion and the statements were admitted into evidence at trial. As noted previously, defendant was convicted of several counts of criminal sexual conduct and child abuse. This appeal followed.

*People v. Cliff*, No. 342995, 2019 WL 5280828, at *1–2 (Mich. Ct. App. Oct. 17, 2019).

A Wayne County jury convicted Petitioner of one count of first-degree CSC-

I, two counts of CSC-II, one count of CSC-III, one count of CSC-IV, two counts of second-degree child abuse, and one count of third-degree child abuse. The trial court sentenced Petitioner to 25 to 40 years' imprisonment for CSC-I, 10 to 15 years' imprisonment for each count of CSC-II, 10 to 15 years' imprisonment for CSC-III, 5 to 10 years' imprisonment for each count of second-degree child abuse, one to two years' imprisonment for third-degree child abuse, and 90 days in jail, time served, for CSC-IV.

Petitioner filed a direct appeal in the Michigan Court of Appeals, raising claims concerning the trial court's admission of prior-acts evidence under Michigan Rules of Evidence 404(b) and 403, and trial counsel's failure to object to the prior-acts jury instruction. *Cliff*, 2019 WL 5280828, at *2-4. On October 17, 2019, the Michigan Court of Appeals affirmed his convictions and sentence. *Id.* Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the following claims:

I.   In criminal sexual conduct cases against a minor, evidence that the defendant committed another sexual misconduct against a minor is inadmissible for his propensity to commit that offense.

II.  Defense counsel did not object to the trial court's instruction that properly protected defendant's right to a fair trial.

III. The complainant is bipolar and has deep mental issues and this issue was never addressed. Because of his condition, the complainant lied and his story changed

4

a number of times showing his mixed logic.

With respect to Issue II, Petitioner further asserted that defense counsel failed to file motions on his behalf, failed to interview the victim's brother as a character witness, and failed to evaluate the victim's mental capacity.  ECF No. 9-10, PageID.791.  On June 30, 2020, the court denied the application on the basis that it was "not persuaded that the questions presented should be reviewed by this Court."  *People v. Cliff*, 505 Mich. 1133 (2020).

On May 14, 2021, Petitioner initiated the present habeas action in this Court raising the following claims:

I.        Is Petitioner Daryl Frederick Cliff constitutionally entitled to post-conviction relief where he was deprived his right to the effective assistance of trial counsel due to counsel's deficient prejudicial and negligent performance and the accumulative effect in that counsel failed to object to confusing and prejudicial instructions, failed to investigate, inter alia to put the prosecutor's case to vigorous adversarial testing, relaying [sic] solely on weaknesses in the prosecution's case resulting in an unreliable and fundamentally unfair outcome of Petitioner's trial, causing a miscarriage of justice thereto, in violation of due process contrary to the 14th Amendment U.S. Const. and Article 1 § 17 and 20 of the Michigan Constitution 1963?

II.       Did the trial court judge abuse his discretion and deny defendant his due process right to a fair trial where the court ruled over defense objection, that MRE 404(b) bad acts evidence was admissible, revealed by Petitioner during his police interrogation and for which there was no other evidence – and which related to an event almost

thirty years earlier – and the court subsequently gave a confusing and prejudicial cautionary instruction suggested a propensity to commit such acts and guilt of the current offenses, which deprived defendant of his constitutional rights to a fair trial and due process of law under the Sixth and Fourteenth Amendments, and Const. 1963, Art. 1 § 17 and 20, and also violated the provisions of MRE 403 and 404(b)?

ECF No. 1, PageID.10, 14.

Respondent filed an answer contending that the first claim was procedurally defaulted, in part, and that all claims lacked merit and do not warrant habeas relief. Petitioner filed a reply contending that the petition should be granted.[1]

## II.   STANDARD OF REVIEW

The following standard of review applies to § 2254 habeas petitions:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

[1] In his reply, Petitioner asserts that he filed a motion for relief from judgment in the state court; however, there is no record of such a filing.

A state court decision is "contrary to" clearly established federal law if it either (1) applies a standard different than what Supreme Court precedent instructs to apply or (2) applies the correct precedent to materially indistinguishable facts but reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 397, 405–06, 413 (2000). But a state court decision that applies a state-law standard is not "contrary to" clearly established federal law if the state standard is practically similar to Supreme Court precedent. *See Robertson v. Morgan*, No. 20-3254, 2020 WL 8766399, at *4 (6th Cir. Dec. 28, 2020) (holding state decision was not "contrary to" because it applied a state-law standard bearing "some similarity" to the *Brady* standard).

The Antiterrorism and Effective Death Penalty Act's habeas provisions, 28 U.S.C. § 2255, "impose[ ] a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). Indeed, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In this way, to obtain habeas relief in federal court, a state prisoner must show that the state court's denial "was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded

disagreement." *Id.* at 103. A "readiness to attribute error [to a state court] is

inconsistent with the presumption that state courts know and follow the law."

*Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

## III.    DISCUSSION

### A.    Ineffective Assistance of Counsel Claim

### 1.    Procedural Default

The Court notes preliminarily that although Respondent argues Petitioner

has procedurally defaulted the portion of his ineffective assistance of counsel claim

related to counsel's failure to investigate the case, it is not obligated to address that

defense because procedural default is not a jurisdictional bar to review of the

merits. *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020); *Trest v. Cain*, 522 U.S.

87, 89 (1997); *see also Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing

*Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)) ("[F]ederal courts are not

required to address a procedural default issue before deciding against the petitioner

on the merits[.]"). The Sixth Circuit notes its own decisions "may sometimes

reach the merits of a petitioner's claim, particularly when the merits are easily

resolvable against the petitioner while the procedural issues are complicated."

*Smith*, 962 F.3d at 207 (citing *Lambrix*, 520 U.S. at 525); *see also id.* (finding

"resolution of the procedural issues . . .  not necessary [and] that the claim is better

resolved on the merits"). The procedural default analysis will not affect the

outcome of this case, and it is more efficient for the Court to proceed directly to the

merits of Petitioner's ineffective assistance of counsel claim.

## 2.   Failure to Investigate and Call Witnesses

Petitioner argues that trial counsel was ineffective for failing to conduct pre-

trial investigation, call witnesses during trial, and put the prosecution's case

through adversarial testing. Petitioner failed to properly present this claim to the

state courts; therefore, the Court reviews the claim de novo. *See Cone v. Bell*, 556

U.S. 449, 472 (2009).

The Sixth Amendment to the United States Constitution guarantees a

criminal defendant the right to the effective assistance of counsel. When counsel is

ineffective, that right is abridged. *McMann v. Richardson*, 397 U.S. 759, 771 n.14

(1970). An ineffective assistance of counsel claim has two components. A

petitioner must show that counsel's performance was deficient, and that deficiency

prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). An

attorney's performance meets the first element when "counsel's representation

[falls] below an objective standard of reasonableness." *Id*. at 688. The petitioner

must show "that counsel made errors so serious that counsel was not functioning as

the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.

"Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.  The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.  "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 562 U.S. at 105.  "Even under de novo review, the standard for judging counsel's representation is a most deferential one." *Id*.

Under certain egregious circumstances, where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," a constructive

denial of counsel occurs.  *United States v. Cronic*, 466 U.S. 648, 659 (1984).

When there is a constructive denial of counsel, a defendant need not show

prejudice to establish ineffective assistance of counsel.  *Id*. at 658–59.  However,

*Cronic's* presumption of prejudice is applied only where "the constructive denial

of counsel and the associated collapse of the adversarial system is imminently

clear."  *Ivory v. Jackson*, 509 F.3d 284, 295 (6th Cir. 2007) (quoting *Moss v.

Hofbauer*, 286 F.3d 851, 860 (6th Cir. 2002)).  For a presumption of prejudice to

arise based on an attorney's failure to test the prosecutor's case, the attorney's

failure "must be complete."  *Bell v. Cone*, 535 U.S. 685, 697 (2002).

   Here, counsel's supposed errors did not rise to a constructive denial: counsel

actively represented Petitioner at trial, effectively cross-examined the prosecutor's

witnesses, made timely objections, and presented a cohesive defense.  Nothing in

the record makes imminently clear a collapse of the adversarial system.

   Since Petitioner fails to show that the *Cronic* analysis applies, the Court now

considers the two-pronged *Strickland* standard.  Petitioner has not met his heavy

burden under *Strickland*.  Petitioner asserts that because the prosecutor relied

heavily on the victim's testimony, defense counsel should have called other

witnesses in his defense.  Petitioner further claims that counsel failed to investigate

potential witnesses.

Petitioner fails to show that defense counsel's actions were objectively unreasonable or that he was prejudiced by counsel's conduct. A habeas petitioner cannot show deficient performance or prejudice resulting from counsel's failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material to his defense. *See Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002). Petitioner cannot prevail on his claim that trial counsel was ineffective for failing to adequately prepare the case or conduct an adequate investigation because he has failed to show how additional pretrial work counsel had allegedly been deficient in failing to perform would have been beneficial to his defense. *See Martin v. Mitchell*, 280 F.3d 594, 607-08 (6th Cir. 2002). Further, Petitioner does not identify any witnesses he claims should have been investigated or called during trial. Petitioner is not entitled to relief on his claims because he failed to provide the Michigan courts or this Court with an affidavit from any witnesses concerning their proposed testimony and willingness to testify on his behalf. *See Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) (affirming denial of an ineffective assistance claim based on counsel's failure to call witnesses where a petition did not "introduce[ ] affidavits or any other evidence establishing what they would have said.").

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, cannot support a claim for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). In failing to attach any offer of proof or any affidavit sworn by any proposed defense witnesses, Petitioner offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether there were witnesses who would have testified favorably for him. Without such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to investigate or to call various witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). Therefore, Petitioner is not entitled to relief on this claim.

**B.     Evidentiary Error & Jury Instruction Claim**

Petitioner next argues that the trial court improperly admitted evidence of prior bad acts in violation of Michigan Rules of Evidence 404(b) and 403. Specifically, Petitioner challenges the trial court's decision to admit into evidence statements he made to police regarding past sexual misconduct with another minor. Petitioner additionally claims the trial court's jury instruction addressing the 404(b) evidence was confusing and prejudiced his case and counsel was ineffective for failing to object to the instruction.

1.    **MRE 404(b)**

With respect to the evidentiary error portion of the claim, the Michigan

Court of Appeals rejected Petitioner's arguments, concluding that the statements

were properly admitted.  In reaching its decision, the court stated the following:

> The prosecution offered the prior back-rubbing incident as evidence
> of defendant's prior criminal sexual conduct with a minor.  Indeed, as
> proffered, defendant's prior act of massaging the boy's genitals
> constituted the "listed offense" of fourth-degree criminal sexual
> conduct against a minor, meaning that it was admissible as propensity
> evidence under MCL 768.27a.  See MCL 768.27a(2)(a); MCL
> 28.722(j), (s)(v).  Defendant, however, argues that the evidence
> should have been excluded under MRE 403.  "Exclusion is required
> under MRE 403 when the danger of unfair prejudice substantially
> outweighs the probative value of the evidence." *People v. Brown*, 326
> Mich. App. 185, 192; 926 NW2d879 (2018) (internal citation and
> quotation marks omitted).  When making its determination under
> MRE 403, the trial court may consider the following nonexhaustive
> list of factors:
>
> > (1) the dissimilarity between the other acts and the
> > charged crime, (2) the temporal proximity of the other
> > acts to the charged crime, (3) the infrequency of the other
> > acts, (4) the presence of intervening acts, (5) the lack of
> > reliability of the evidence supporting the occurrence of
> > the other acts, and (6) the lack of need for evidence
> > beyond the complainant's and the defendant's testimony.
> > [*Watkins*, 491 Mich. at 487-488.]
>
> Defendant points out that the prior act occurred some 30 years before
> the incident at issue and argues that the prosecution presented
> insufficient evidence for the jury to reliably conclude that the prior act
> did occur.  Although we agree that the temporal separation between
> the prior act and the acts in this case is a factor weighing in favor of
> exclusion under MRE 403, we cannot conclude that the evidence
> supporting the prior act was unreliable.  Indeed, the prior act was
> supported by defendant's own alleged admissions during the police

interview and any questions whether the conduct actually occurred were properly presented for the jury's determination.  Moreover, the prior act was substantially similar to a portion of the conduct for which defendant was charged.  Both the prior act and the current charges involve a teenage boy and conduct that occurred, at least partially, in defendant's basement. In both instances, defendant initiated the sexual predation by giving the boy a massage and using the massage as a rouse to touch the boy's genitals.  "[W]hen applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id*. at 487.  Given the significant probative value of the prior-acts evidence, we are unable to conclude that the evidence should have been excluded under MRE 403.

*Cliff*, 2019 WL 5280828, at *2–3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  Here, there is no merit in Petitioner's claim that "other acts" evidence was improperly introduced at his trial under Michigan Rules of Evidence 404(b) or 403, because the alleged violation of the Michigan Rules of Evidence is not a cognizable claim on federal habeas corpus review.  *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009).  "[A] federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).

To the extent that Petitioner's claim implicates due process protections, the Supreme Court has declined to hold that the admission of "other acts" evidence is so extremely unfair that it violates fundamental conceptions of justice. *Dowling v. United States*, 493 U.S. 342, 352-53 (1990). The Court has discussed when other-acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988), but has not addressed the issue in constitutional terms. Such matters are more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. *Dowling*, 493 U.S. at 352. Moreover, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no "clearly established federal law" to which the state court's decision could be "contrary" within the meaning of section 2254(d)(1). *Id*. at 513. Therefore, Petitioner is not entitled to relief.

### 2.   Jury Instructions & Counsel's Failure to Object

Petitioner further claims that the trial court erred by providing a confusing and prejudicial prior-acts-evidence jury instruction, and that trial counsel was ineffective for failing to object to the instruction. The Michigan Court of Appeals rejected both arguments, concluding that although the instruction was unclear, it was consistent with the model jury instruction. Specifically, the court stated:

16

In regard to the prior-acts evidence, the trial court instructed the jury as follows:

> And in this particular case, there's some really tricky stuff that you have to navigate. One of those tricky things was past accusations of sexual behavior. That's really tricky. Most people, they listen to that tape, first of all, you have to—Well, you look at the tape, obviously. It's, it's Mr. Cliff. So, there's no question about Mr. Cliff being there. You still have to make a determination if he's telling the truth.

> Before you accept what he says, it's easy to see that it's him, you have to accept that he's telling the truth. And then, if you decide that, you know, just: What is he talking about? And what impact does that have on this trial? Because the tricky part and why, you know, this is just really strange, is because it's almost that you tell, being told lightning strikes twice. If he did it once, he'll do it again. So, you don't even have to really believe this person because, you know, you don't have to go through the same changes because if you believe that he admitted to having inappropriate— He did it before. He'll do it again. That once a person exhibits some behavior, they're gonna do that behavior over and over and over, doesn't matter if it was ten years ago, twenty years ago, thirty years ago, forty years ago, yesterday. You know that's, that's the leap.

> So, you have to use that evidence carefully because you have to determine if what you heard today and yesterday, well yesterday and the day before, if that amounts to fulfilling the elements of the crime that Mr. Cliff has been charged with.

We agree with defendant that the trial court's instruction was not clearly worded and note that the better practice would have been for

the trial court to give the standard instruction set forth at M Crim JI
20.28a. That being said, the trial court's instruction does contain the
substance of M Crim JI 20.28a, particularly the model instruction's
requirement that the jury must find that defendant actually committed
the prior act before it could use the prior act as propensity evidence.
Moreover, the trial court reminded the jury that it was only to convict
defendant if it found that his conduct in this case fulfilled each
element of the charged offenses.

To the extent that defense counsel could have objected and requested
a clearer instruction, we note the tendency of the objection to
highlight the prior-acts evidence.  Counsel is not ineffective for
making a strategic decision not to highlight prejudicial evidence. See
*People v. Horn*, 279 Mich. App. 31, 40; 755 N.W.2d 212 (2008).  In
any event, it is unlikely that the outcome of the proceeding would
have been different had defense counsel made the objection.  NR
testified in significant detail about years of sexual and physical abuse
that defendant inflicted upon him.  The jury's verdict indicates that it
found this testimony credible and the testimony was corroborated, at
least in part, by physical evidence at defendant's home.  Again, the
trial court's instruction contained the basic elements of the model
instruction.  Given the significant evidence supporting defendant's
convictions, it is unlikely that any additional clarity in the trial court's
instruction would have altered the outcome of the proceedings.
Defendant's claim of ineffective assistance is without merit.

*Cliff*, 2019 WL 5280828, at *3–4.

The state court's decision is not an unreasonable application of federal law

or the facts.  For habeas relief to be warranted on the basis of incorrect jury

instructions, Petitioner must show that the erroneous instruction "so infected the

entire trial that the resulting conviction violates due process."  *Henderson v. Kibbe*,

431 U.S. 145, 155, (1977); *see also Estelle*, 502 U.S. at 75 (erroneous jury

instructions may not serve as the basis for habeas relief unless they have "so

18

infused the trial with unfairness as to deny due process of law"); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Stated differently, a jury instruction is not judged in artificial isolation; it must be considered in the context of the instructions' entirety and the trial record. *Jones v. United States*, 527 U.S. 373, 391 (1999); *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996).

Where an instruction is ambiguous—though not necessarily erroneous—it can only run afoul of the Constitution provided there is a reasonable likelihood the jury applied the challenged instruction in a way that violates it. *See Estelle*, 502 U.S. at 72–73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). A habeas petitioner must show that the challenged instruction had a substantial and injurious effect or influence on the jury's verdict. *Hedgpeth v. Pulido*, 555 U.S. 57, 61–62 (2008). "Not every ambiguity, inconsistency, or deficiency in a jury instruction" violates due process. *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam). Moreover, a state court's finding that challenged jury instructions "adequately reflected the applicable state law and corresponding state charges" is binding on federal habeas review. *White v. Steele*, 629 Fed. Appx. 690, 695 (6th Cir. 2015).

Petitioner fails to show that the jury instruction violated due process. While the Court agrees that the instruction was not clearly worded, it was not so ambiguous that the jury could not properly apply it. For instance, the instruction substantially followed the state's model jury instruction on evidence of other acts

of child sexual abuse, which provides:

> (1) The prosecution has introduced evidence of claimed acts of sexual misconduct by the defendant with [a minor / minors] for which [he / she] is not on trial.

> (2) Before you may consider such alleged acts as evidence against the defendant, you must first find that the defendant actually committed those acts.

> (3) If you find that the defendant did commit those acts, you may consider them in deciding if the defendant committed the [offense / offenses] for which [he / she] is now on trial.

> (4) You must not convict the defendant here solely because you think [he / she] is guilty of other bad conduct. The evidence must convince you beyond a reasonable doubt that the defendant committed the alleged crime, or you must find [him / her] not guilty.

*See* Mich. Crim. Jury Instructions 20.28a.

Consistent with the first prong of the model instruction, trial court instructed the jury that the prosecutor introduced evidence of "past accusations of sexual behavior."  ECF No. 9-7, PageID.656.  The court next instructed the jury to determine whether they believed that Petitioner committed the past sexual misconduct, and whether the past misconduct suggested that Petitioner committed the charged offense. *Id*.  Finally, the court instructed the jury to consider whether the evidence "amounts to fulfilling the elements of the crime that Mr. Cliff has been charged with." *Id*. at PageID.657.  At bottom, the instruction provided was faithful to the state's model instruction.  The trial court instructed the jury on each prong of the model instruction and adequately informed the jury how to properly

apply the instruction.  Therefore, the instruction did not violate Petitioner's due process rights.

Given this Court's decision that the jury instructions were appropriate under state law and did not render the trial fundamentally unfair, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct.  Attorneys do not provide constitutionally ineffective assistance for electing not to take futile actions, *Richardson v. Palmer*, 941 F.3d 838, 857 (6th Cir. 2019) (citing *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000)), or for "failing to raise . . . meritless arguments."  *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999).  Petitioner's ineffective assistance of trial counsel claim has no merit.  Accordingly, the Court must deny habeas relief on this claim.

## IV.   CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this dispositive decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies habeas on the merits, the substantial-showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000).  In applying that standard, a district court may not

21

conduct a full-merits review; it must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Miller-El v. Cockrell*, 537 U.S. 322, 336–37 (2003). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Because reasonable jurists would not disagree that Petitioner has not substantially showed the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2). And Petitioner will be denied leave to appeal *in forma pauperis* because his appeal would be frivolous. See FED. R. APP. P. 24(a).

## V.    CONCLUSION

Accordingly, it is **ORDERED** that the Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED WITH PREJUDICE**.

Further, it is **ORDERED** that a certificate of appealability is **DENIED**.

Further, it is **ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED**.

**This is a final order and closes the above-captioned case**.

**SO ORDERED**.

                                        s/F. Kay Behm
                                        F. KAY BEHM
Dated: July 9, 2024                     United States District Judge

22